# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CASSANDRA OSVATICS, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>LYFT, INC.<br><br>     Defendant. | Case: 1:20-cv-01426-KBJ |

## *AMICUS CURIAE* BRIEF OF THE DISTRICT OF COLUMBIA
## IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
## DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

KARL A. RACINE
Attorney General for the District of Columbia

KATHLEEN KONOPKA
Deputy Attorney General
Public Advocacy Division

*/s/*
JIMMY R. ROCK [493521]
Assistant Deputy Attorney General
Public Advocacy Division

*/s/*
RANDOLPH T. CHEN [1032644]
VIKRAM SWARUUP
Assistant Attorney General
441 4th Street, N.W., Suite 600 South
Washington, D.C. 20001
(202) 442-9854 (phone)
(202) 730-0623 (fax)
randolph.chen@dc.gov

*Attorneys for Amicus Curiae District of Columbia*

# TABLE OF CONTENTS

STATEMENT OF INTEREST OF *AMICUS CURIAE*..................................................................1

BACKGROUND ............................................................................................................................1

ARGUMENT ..................................................................................................................................3

    I.     District public policy—unlike the FAA—demands greater scrutiny of adhesive arbitration agreements.................................................................................................3

    II.    Under District law, determining whether an adhesive arbitration agreement is unconscionable is a highly fact-specific inquiry............................................................6

CONCLUSION................................................................................................................................8

# TABLE OF AUTHORITIES

*Cases*

*Andrew v. Am. Imp. Ctr.*, 110 A.3d 626 (D.C. 2015) .......................................................3, 4, 6, 7, 8

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ......................................................5, 7, 8

*Bennett v. Fun & Fitness of Silver Hill, Inc.*, 434 A.2d 476 (D.C. 1981).........................................6

*Keeton v. Wells Fargo Corp.*, 987 A.2d 1118 (D.C. 2010) ....................................................6, 7, 8

*Masurovsky v. Green*, 687 A.2d 198 (D.C. 1996) ..........................................................................3

*New Prime Inc. v. Oliveira*, 139 S. Ct. 532 (2019).........................................................................5

*Statutes*

D.C. Code § 16-4406 .......................................................................................................................3

9 U.S.C. § 2......................................................................................................................................3

*Other Authority*

Council of D.C., COMM. ON PUB. SAFETY & THE JUDICIARY, REPORT ON BILL 17-50 (the "Arbitration Amendments Act of 2007") (June 4, 2007) .........................................4, 5

*Paid Sick Leave*, Nat'l Conference of State Legislatures (Apr. 9, 2020) .........................................1

## STATEMENT OF INTEREST OF *AMICUS CURIAE*

The District of Columbia ("District") submits this brief as *amicus curiae* in support of Plaintiff's Opposition to Defendant's Motion to Compel Individual Arbitration and Stay Proceedings Pending Arbitration. This brief addresses the sole issue of interpreting the District's Revised Uniform Arbitration Act ("RUAA"), D.C. Code §§ 16-4401, *et seq.* The District has a clear interest in the proper interpretation of the RUAA, the District's main law governing arbitration agreements and proceedings.

Furthermore, the District has passed several laws vital to protecting the workplace rights of District residents, which include a statute requiring the provision of paid sick leave. But these laws may be rendered practically unenforceable by courts if District residents are repeatedly swept into mandatory arbitration through the widespread deployment of adhesive contracts. Indeed, when the Council of the District of Columbia enacted the RUAA in 2007, it expressly articulated concerns that such agreements favored business interests over those of District residents. The District thus has a strong interest in ensuring that its residents are not trapped by contracts of adhesion or other unconscionable agreements mandating arbitration of their claims that arise under District law. The District submits this brief to clarify District law regarding public policy and unconscionability as applied to arbitration agreements under the RUAA.

## BACKGROUND

The underlying merits issue in this case concerns the District's Accrued Sick and Safe Leave Act ("ASSLA"), which requires employers to provide employees with paid sick leave. D.C. Code §§ 32-531.01, *et seq.* Such laws are relatively uncommon; only twelve states and the District have legislated paid sick leave requirements. *See Paid Sick Leave*, Nat'l Conference of State Legislatures (Apr. 9, 2020), https://www.ncsl.org/research/labor-and-employment/paid-sick-leave.aspx. The District is thus uniquely protective of its workers on this score.

Plaintiff Cassandra Osvatics alleges in her Complaint that she was not provided with ASSLA's required paid sick leave during her time working as a driver for Defendant Lyft, Inc. ("Lyft"), a mobile application-based transportation provider. (Compl. ¶¶ 9, 93.) Ms. Osvatics alleges that Lyft denied her paid sick leave in violation of District law because she should have been classified as an "employee" (whom ASSLA covers) but instead was improperly misclassified as an "independent contractor" (whom ASSLA does not). (*Id.* ¶¶ 48, 90-92.)

However, adjudication of this lawsuit's merits is currently on hold. Lyft has filed a Motion to Compel Individual Arbitration and Stay Proceedings Pending Arbitration (the "Motion").[1] The Motion asserts that Ms. Osvatics entered into an agreement to arbitrate with Lyft and argues that the RUAA thus "requires arbitration" of her claim. (Mot. at 29.) Ms. Osvatics has filed an Opposition, responding that any arbitration agreement is unenforceable as contrary to District public policy and on unconscionability grounds. (Opp'n at 27-31.) Ms. Osvatics alleges that the arbitration agreement at issue is a contract of adhesion presented in a "take-it-or-leave-it" fashion and contains a problematic waiver of her rights to participate in a class action. (*Id.* 5-6.)

The District submits this *amicus curiae* brief to clarify District law regarding public policy and unconscionability as applied to arbitration agreements. D.C. Court of Appeals precedent and the RUAA's legislative history demonstrate that District public policy demands heightened scrutiny of adhesive arbitration agreements. This is distinct from the federal policy

---

[1] Lyft's Motion makes two primary arguments seeking to compel arbitration: one under the Federal Arbitration Act ("FAA") and the other under the RUAA. (Mot. at 6, 29.) The District understands that Ms. Osvatics and Lyft take opposing views on the FAA's applicability to this case due to whether Ms. Osvatics qualifies for that law's "transportation worker exemption." (*See* Mot. at 6-28; Opp'n 13-22.) The District does not take a position on the applicability of the FAA. Rather, the District's *amicus curiae* brief specifically addresses the context where the RUAA is interpreted <u>independent of</u> the FAA.

2

that applies in the context of the Federal Arbitration Act ("FAA"), which more strongly favors enforcing such agreements. As to unconscionability, District law requires the application of a detailed and fact-specific analysis and has cast doubt on the enforceability of arbitration agreements that resemble the one at issue in this case. Together, these elements of District law require an inquiry that resists bright line rules and contradicts Lyft's assertion that the RUAA flatly "requires" arbitration of Ms. Osvatic's claim.

## ARGUMENT

**I.     District public policy—unlike the FAA—demands greater scrutiny of adhesive arbitration agreements.**

The FAA and the RUAA contain similar provisions stating that arbitration agreements are enforceable except "upon a ground that exists at law or in equity for the revocation of a contract." D.C. Code § 16-4406; *see also* 9 U.S.C. § 2. Lyft's RUAA argument depends on this parallel language to bootstrap precedent interpreting the FAA to the RUAA. (*See* Mot. at 29.) Lyft first contends that the Supreme Court has interpreted the FAA to set out a "liberal federal policy favoring arbitration." (Mot. at 6 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).) Lyft then argues that this precedent should lead to identical outcomes under the RUAA, citing a 1994 D.C. Court of Appeals opinion that held FAA interpretations were "persuasive authority" for interpreting identical District arbitration laws. (*Id.* at 31 (quoting *Masurovsky v. Green*, 687 A.2d 198, 204 (D.C. 1996)).)

However, Lyft's two-step elides a later divergence in District and federal policy as to adhesive arbitration agreements. Splitting from the federal law's "liberal" policy favoring arbitration, the D.C. Court of Appeals' 2015 decision in *Andrew v. American Import Center* highlights that under District law, such adhesive agreements warrant higher scrutiny. 110 A.3d 626 (D.C. 2015). In *Andrew*, the appellant had alleged that the adhesive nature of an arbitration

3

agreement made it unconscionable, which the trial court had rejected in a summary order compelling arbitration. *Id.* at 638-39. The *Andrew* Court reversed and remanded, holding that those allegations "demand[ed] a more developed [factual] record" on those allegations. *Id.* at 639. Moreover, in so holding, the Court expressly noted the federal policy that "overwhelmingly favors arbitration," *id.* at 634 & n.10, had been "seriously called into question by the realization that all too often, arbitration agreements are included in the language of contracts of adhesion," *id.* at 634-35. The Court ultimately traced this policy shift to the legislative history behind the RUAA's 2007 enactment, finding that the Council for the District of Columbia ("Council") had expressly "developed a record that clearly recognizes the injury suffered by a consumer who is compelled to arbitrate with a commercial entity pursuant to an arbitration clause in an adhesion contract is significant." *Id.* at 634.

A closer look at the RUAA's legislative history brings these public policy concerns into sharper relief. The Council's Committee Report ("Committee Report") for the RUAA begins by noting that the "increasing[]" use of arbitration agreements in consumer contracts, "especially contracts of adhesion, has given rise to consumer protection complaints."[2] (Committee Report at 1-2.[3]) The Committee Report goes on to expressly state that the RUAA includes "several consumer friendly amendments" that were added in direct response to the "view of many [] that the arbitration process has been <u>slanted in the favor or business over consumers</u>." (*Id.* at 2

---

[2] The public policy concerns expressed by the Council in the Committee Report are generally framed around the perspective of individual consumers in relation to corporate business entities. These concerns apply with equal force to individual workers raising, as Ms. Osvatics does here, employment-related claims. Such workers are similarly situated to individual consumers because they both disproportionately lack bargaining power in relation to corporate business entities, be they merchants or employers.

[3] *See* Council of D.C., COMM. ON PUB. SAFETY & THE JUDICIARY, REPORT ON BILL 17-50 (the "Arbitration Amendments Act of 2007") (June 4, 2007), https://lims.dccouncil.us/downloads/LIMS/18475/Committee_Report/B17-0050-CommitteeReport1.pdf

4

(emphasis added).) The Council also articulated undesirable results arising from this power imbalance, including the observation that "many businesses have found that mandatory arbitration is advantageous" because "the business controls the choice of arbitrators, and can afford the arbitration process more easily than can the consumer." (*Id.*) Finally, the Committee Report also makes an express distinction between the RUAA and the FAA: "Although there is not complete agreement about the relationship between federal and state law on certain specific issues, the RUAA is drafted to avoid preemption [by the FAA]." (*Id.*)

As to the federal preemption issue, the divergence between District and federal public policy can be readily squared. Where the FAA applies, the Supreme Court has held that the "liberal federal policy favoring arbitration agreements" embraces the enforcement of even adhesive arbitration agreements with class action waivers—and thus displaces state policy to the contrary. *Concepcion*, 563 U.S. at 352. But where the FAA is <u>not</u> in play, the Supreme Court has also made clear that the force of that policy evaporates. *See New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 543-44 (2019). In *New Prime*, the Court held that a truck driver classified as an independent contractor fell within the FAA's exemption for certain transportation workers. *Id.* at 544. And once outside the FAA's ambit, his employer's fallback appeal to the same "liberal federal policy favoring arbitration agreements" carried no weight. *Id.* at 543 (applying that policy to individual expressly exempted from the FAA would "thwart rather than honor the effectuation of congressional intent"). Accordingly, where the FAA does not apply, an adhesive arbitration contract is properly evaluated through the lens of District public policy, which requires a heightened degree of scrutiny.

## II. Under District law, determining whether an adhesive arbitration agreement is unconscionable is a highly fact-specific inquiry.

Where, as here, a plaintiff challenges the unconscionability of an agreement to arbitrate, the District's "well-settled unconscionability standard calls for a strongly fact-dependent inquiry" and "require[s] that a court conduct an expedited evidentiary hearing when parties dispute the validity of the arbitration clause." *Keeton v. Wells Fargo Corp.*, 987 A.2d 1118, 1121 (D.C. 2010). The "central question" regarding unconscionability under District law is "whether the manner of agreement and/or the terms of the contract are so one-sided as to be unenforceable as a matter of law." *Bennett v. Fun & Fitness of Silver Hill, Inc.*, 434 A.2d 476, 480 (D.C. 1981). The one-sidedness of a contract may be demonstrated by procedural imbalances such as a party's "absence of meaningful choice" or substantive asymmetries like "contract terms which are unreasonably favorable to the other party"—though frequently, unconscionability challenges involve a "combination of both." *Id.* at 480 & n.4. "A challenge that [an arbitration] clause is unconscionable disputes its validity, not its scope, and it is up to the courts, not arbitrators, to adjudicate the validity of an arbitration clause." *Keeton*, 987 A.2d at 1122.

The D.C. Court of Appeals has not directly addressed the merits of an unconscionability challenge to an adhesive arbitration agreement. But its decisions in *Keeton* and *Andrew* elucidate factors that may favor such a finding—many of which appear present in this case. In *Keeton*, for example, the trial court compelled arbitration of a consumer protection lawsuit filed against a car dealership regarding a vehicle purchase. *Id.* at 1120. The D.C. Court of Appeals reversed, remanding for further factual development as to the plaintiff's allegation that the arbitration agreement was unconscionable. *Id.* at 1120-21. The *Keeton* Court elaborated regarding procedural unconscionability, observing that if "every dealership in the region also imposes similar arbitration clauses in similar contracts of adhesion, their existence would not amount to

6

reasonable choice." *Id.* at 1121 n.13. Here, Ms. Osvatics similarly alleges that she lacked "meaningful choice" because "mandatory arbitration clauses have become nearly ubiquitous in the rideshare industry" and are likewise deployed by Lyft's competitors. (Opp'n at 31.) *Keeton* also raised concerns regarding the "imbalance of power in arbitrator selection" arising from a business becoming a "repeat player" in the arbitration system and the impact arbitration costs had on an individual's "ability to seek redress." *Keeton*, 987 A.2d at 1123; *see also Bennett*, 434 A.2d at 481 (individual's "weaker bargaining position" relevant to unconscionability inquiry). Ms. Osvatics alleges that all of these factors are likewise present here. (Opp'n at 29.)

*Andrew* echoes the concerns raised in *Keeton* and reached a similar result, reversing a trial court's order compelling arbitration and remanding for further factual development. 110 A.3d at 639. Moreover, *Andrew* flagged for the lower court another issue relevant to substantive unconscionability—a class action waiver. *Id.* at 638. The *Andrew* Court corrected the trial court for "erroneously" finding that the arbitration agreement did not preclude class actions when in fact the agreement did just that, and pointed out that the appellant had raised "various cases in which other courts found such clauses barring class actions substantively unconscionable." *Id.* Here, it does not appear to be disputed that Lyft's arbitration agreement also contains a class action waiver. (Mot. at 12.)

Finally, the timing of the *Andrew* decision is instructive. *Andrew* was decided in 2015—four years after the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). In *Concepcion*, the Supreme Court held that the FAA favored the enforcement of an adhesive arbitration agreement containing a class action waiver, thus preempting a California state law to the contrary. *Id.* at 352. Accordingly, *Andrew* presented the D.C. Court of Appeals with the opportunity to directly apply *Concepcion*'s interpretation of the FAA to District law.

But it did not do so. Instead, the *Andrew* Court observed that if anything, District law regarded the class action waiver with considerable skepticism in the unconscionability analysis. *Andrew*, 110 A.3d at 638. Accordingly, *Andrew* contradicts Lyft's argument that simply because the FAA "would not allow non-enforcement of the arbitration agreement on the basis of the class waiver," District law would "likewise require" the same result. (Mot. at 30.)

Ultimately, the facts as alleged in this case bear all the hallmarks of unconscionability identified by the D.C. Court of Appeals in *Keeton* and *Andrew*. Many of these factors do not appear disputed—such as the class action waiver, disparate bargaining power, and prevalence of similar arbitration provisions in Lyft's industry—and would sustain denial of Lyft's Motion. However, to the extent that open factual issues are identified, the District urges the Court to conduct an expedited evidentiary hearing to complete the factual record in order to render a fulsome decision on the unconscionability issue.

## CONCLUSION

Should the Court find that the FAA is inapplicable in this case, it should deny Defendant's Motion to Compel Arbitration under the RUAA or, in the alternative, hold an evidentiary hearing to develop the factual record to assess Plaintiff's allegation that the arbitration agreement is unconscionable.

                                                           Respectfully submitted,

Date: July 21, 2020                        KARL A. RACINE
                                                          Attorney General for the District of Columbia

                                                           KATHLEEN KONOPKA
                                                           Deputy Attorney General
                                                           Public Advocacy Division

*/s/*
JIMMY R. ROCK [493521]
Assistant Deputy Attorney General
Public Advocacy Division

*/s/*
RANDOLPH T. CHEN [1032644]
VIKRAM SWARUUP
Assistant Attorney General
441 4th Street, N.W., Suite 600 South
Washington, D.C. 20001
(202) 442-9854 (phone)
(202) 730-0623 (fax)
randolph.chen@dc.gov

*Attorneys for Amicus Curiae District of Columbia*